IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JIMMY BERTRAND and<br>NICOLA BERTRAND, ET AL | §<br>§<br>§ | CIVIL ACTION NO. 1:09-CV-358 |
| VS. | §<br>§ | Judge Marcia A. Crone |
| DENISE WHITE, ET AL | §<br>§ | |

## PLAINTIFFS' FIFTH AMENDED CLASS ACTION COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs LARRY DARRIK HOOPER and TEEL MARIE HOOPER, CATHERINE MARGARET CORTEZ, and JERRY MATHIS AND LOISTENE MATHIS, Individually and on Behalf of All Others Similarly Situated ("Representative Plaintiffs"), file this Fifth Amended Class Complaint against LOUIS POWELL d/b/a POWELL FINANCIAL SERVICES, ELIZABETH POWELL, CARL MARTIN STEWART, U.S. ENERGY CREDITS, VIRTUAL PROFESSIONAL EDUCATION, KASHANEBO, INC., OHT PARTNERS, MAT PARTNERS, SALLY HAND-BOSTICK, NATIONAL EXPRESS TAX, LLC, ELIZABETH SPINELLI, EDWARD W. ADAMS, and MR. TAX OF AMERICA, and would respectfully show the Court:

### A.
### PARTIES

**Plaintiffs**

1. Plaintiffs Larry Darrik Hooper and Teel Marie Hooper ("the Hoopers" hereinafter) are individuals residing in Panola County, Texas.

2. Plaintiff Catherine Margaret Cortez (formerly Harvey and "Cortez" hereinafter) is an individual residing in Collin County, Texas.

3. Plaintiffs Jerry Mathis and Loistene Mathis ("the Mathis hereinafter) are individuals residing in Dallas County, Texas.

**Defendants**

4. Defendant Louis Powell has answered and is before this Court.

5. Defendant Elizabeth Powell has answered and is before this Court.

6. Defendant Carl Martin Stewart has answered and is before this Court.

7. Defendant U. S. Energy Credits has answered and is before this Court.

8. Defendant Virtual Professional Education has answered and is before this Court.

9. Defendant POWELL FINANCIAL SERVICES is a partnership or other business entity doing business in the state of Texas and may be served with process by serving: Louis Powell, 419 W. Sabine Street, Carthage, Texas 75633.

10. Defendant KASHANEBO, INC. is a domestic corporation doing business in the state of Texas and may be served with process by serving: Louis Powell, 419 W. Sabine Street, Carthage, Texas 75633.

11. Defendant OHT PARTNERS is a partnership or other business entity doing business in Texas and may be served with process by serving: Carl Martin Stewart, 407 County Road 279, Carthage, Texas 75633.

12. Defendant MAT PARTNERS is a partnership or other business entity doing business in Texas and may be served with process by serving: Carl Martin Stewart, 407

County Road 279, Carthage, Texas 75633.

13. Defendant Sally Hand-Bostick has answered and is before this Court.

14. Defendant National Express Tax, LLC has answered and is before this Court.

15. Defendant Elizabeth Spinelli has answered and is before this Court.

16. Defendant Mr. Tax of America has answered and is before this Court.

17. Defendant Edward W. Adams has answered and is before this Court.

B.

## JURISDICTION AND VENUE

18. This case has been appropriately removed by a defendant to federal court pursuant to 28 U.S.C. §1455(b) and 28 U.S.C. §1332(d) grants this Court jurisdiction.

19. While it can be argued that a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Texas, it is undeniable that one or more of the Defendants can be found in this district, establishing venue under 28 U.S.C. §1391(b)(3).

20. This Court has personal jurisdiction over all Defendants because each of them is a resident of Texas.

C.

## FACTS

### Claim for Relief

21. Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against the Defendants for negligence (including violations of Internal Revenue Code Sections 6700 and 6701) as a result of a scheme to market to class members

ownership interests for reduction of class members' tax liability by way of energy tax credits from alleged production of methane gas at alleged land fill conversion operations. Plaintiffs seek, on behalf of themselves and the class, disgorgement of all unjust enrichment to the defendants, actual damages and losses, costs and attorneys fees.

**Defendants' Scheme**

22.     Producers of fuel from nonconventional sources ("FNS") are allowed to claim a federal income tax credit for the production and sale of the fuel. I.R.C. § 45K (formerly I.R.C. § 29). Such production and sale of fuel from nonconventional sources could include methane fuel generated from landfill biomass (i.e., rotting trash).

23.     A fraudulent scheme was developed by out-of-state individuals names George Calvert and Gregory Guido and their various entities and then promoted to the Texas defendant tax preparers whereby the tax preparers would sell to clients seeking defendant's tax preparation services an investment that was supposed to generate legitimate tax credits that would lower taxable income. The investment product was supposedly an ownership interest in a nonconventional energy production facility through partnerships created by the original out-of-state promoters.

24.     Unknown to defendants, the claims that the alleged production facilities produced and sold methane fuel converted from landfill biomass was false, as were the claims that ownership interest would qualify customers for FNS tax credits under the Internal Revenue Code.

25.     Furthermore, defendants were told that their clients could legitimately buy the ownership interests in the year their tax return was being prepared for the previous year

and deduct the credit from taxes for the previous tax year.

26. The Department of Justice estimate that between 2001 and 2006, a total of over 6,000 fraudulent federal income tax returns were prepared and filed nationwide for taxpayers claiming over $30 million worth of false FNS credits based on sales traceable to the out-of-state promoters.

**The Law on Alternative Fuel Source Credits (26 IRC § 45K)**

27. Section 45K of the Internal Revenue Code does allow a credit for the production of methane fuel from non-conventional sources ("FNS credits"), including biomass from landfills (i.e., the rotting trash previously referenced). IRC § 45K(c)(3).

28. As would be expected, there are various restrictions on the FNS credit. For example, the fuel must be produced by the taxpayer and sold by the taxpayer to an unrelated person during the taxable year for which the credit is claimed. IRC § 45K(a)(2).

29. The credit applies to qualified fuels sold before January 1, 2003, which are produced in a facility placed in service before July 1, 1998, pursuant to a binding written contract in effect before January 1, 1997. IRC § 45K(f).

30. The credit also applies to qualified fuels sold before January 1, 2008, if the facility is placed in service after December 31, 1992. IRC § 45K(f).

31. An owner of a qualified property or energy producing facility who is not able to take full advantage of the tax credit will sometimes sell an economic interest in the property or facility to someone who is able to take full advantage of the tax credit.

32. The purchase price of the property or facility may include a mark-up amount that reflects the value of the FNS credit to be generated by future production and sale of

qualified fuel. This is referred to as a "monetization" of the FNS credit.

33. The amount of FNS credit allowed in a given year is based on the amount of fuel the taxpayer produces and sells that year. The taxpayer is entitled to the FNS credit in proportion to his or her ownership interest in the gross sales from the property or facility. IRC § 45K(d)(3).

34. The taxpayer must acquire economic benefits and burdens related to the property or facility including the potential to receive additional economic benefit from the sale of fuel after the credit expires.

35. In addition, the taxpayer must report income from the sale of the qualified fuel related to the FNS credits on his or her federal income tax return.

36. <u>Assignment and/or sale of FNS credits is not allowed under the statute.</u> When FNS credits are transferred, the title to the property or facility must also be transferred, and the amount of credit transferred must be tied to the taxpayer's share of revenue from the sale of the fuel.

**Mechanics of the Sham Scheme**

37. The Environmental Protection Agency (EPA) identifies all landfills and whether they are candidates for an energy production facility, have a current energy production facility, or are in the process of building one. This information is posted at http://epa.gov/lmop/proj/index.htm. The website includes the landfill name, county, and city, the landfill owner, the energy project status and start date, and the name of the company who is producing the fuel. Therefore, the subpromoters could have easily discovered whether the interests they were selling were valid, i.e. if there was a production facility in

place on the landfill, when it was put into place, and whether it was functional.

38. Defendant preparers incorrectly told their customers that they were entitled to FNS credits for their investment in the energy production facilities under IRC § 45K, even though customers were not eligible for this credit. The subpromoters incorrectly told customers that they did not have to own an interest in an energy production facility during the year for which the FNS credit was claimed. In reality, a customer is only eligible for the credit for the year that the customer produced and sold FNS; accordingly, the customer must own an interest in an energy production facility in the year for which the credit is claimed.

39. Defendant preparers incorrectly told customers that they could buy FNS credits without buying an interest in an energy production facility or qualified property under section 45K.

40. FNS credits cannot be separated from the sale of qualified fuel. A customer was required to acquire an economic interest in the FNS-producing property or facility before he or she could claim tax credits for the sale of FNS. When FNS credits are transferred, the title to the property or facility which produced FNS must also be transferred.

## Harm to Plaintiffs and Other Customers

41. Plaintiffs have been harmed by defendants' actions because the purported purchases by Plaintiffs and other customers are shams without value, resulting in plaintiffs and other customers claiming tax credits to which they are not entitled and which were rejected by the I.R.S., resulting in Plaintiffs and other customers having to pay interest and,

in many cases, penalties for taxes now delinquent which would been timely paid but for the invalid credits taken on tax returns as a result of Defendants' scheme.  Plaintiffs and other customers have also lost significant time and in many cases incurred accounting and/or attorney fees as a result of their participation in Defendants' scheme.

### D.

### CLASS ACTION ALLEGATIONS

42.  Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated pursuant to Rules 23(a) and 23(b)(1)-23(b)(3) of the Federal Rules of Civil Procedure.

43.  The Class which Plaintiffs seek to represent is defined as:

All persons in the United States who:

a.  Purchased, on or after January 1, 2003, a purported interest in a nonconventional energy production facility through partnerships created by Calvert and Guido or named Defendants and which partnerships were claimed to produce and sell methane fuel from landfill biomass which would allegedly qualify customers for fuel from nonconventional sources tax credits under the Internal Revenue Code;

b.  After promotion, marketing or sale of the purported interest in sham fuel from nonconventional sources federal income tax credits for the production and sale of fuel by any of the Texas Defendants named in this lawsuit; and

c.  Subsequently claimed tax credits through partnerships or facilities the Internal Revenue Service later determined to be not qualified to claim tax

credits (the "Plaintiff Class").

44. Excluded from the Plaintiff Class are Defendants and their directors, officers and employees.

45. <u>Numerosity</u> (Fed.R.Civ.P. 23(a)(1)): The Plaintiff Class is so numerous that joinder of all individual members in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

46. Plaintiffs are informed and believe and thereon allege that there are, at a minimum, thousands (i.e., two thousand or more) of members that comprise the Plaintiff Class.

47. The exact size of the Plaintiff Class and identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to Defendants' sales and transaction records.

48. Members of the Plaintiff Class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

49. <u>Typicality</u> (Fed.R.Civ.P. 23(a)(3): Plaintiffs' claims are typical of the claims of the entire Plaintiff Class. The claims of Plaintiffs and member of the Plaintiff Class are based on the same legal theories and arise from the same unlawful conduct.

50. Plaintiffs and members of the Plaintiff Class were each customers of one or more of the Defendants on or after January 1, 2003, resulting in a purchase of a sham interest in a facility which would purportedly result in the customer being allowed a lawful

FNS tax credit on the customer's tax return, which tax credit was subsequently disallowed by the I.R.S.

51. <u>Common Questions of Fact and Law</u> (Fed.R.Civ.P. 23(a)(2) and (b)(3): There are well-defined community of interest and common questions of fact and law affecting the members of the Plaintiff Class.

52. The questions of fact and law common to the Plaintiff Class predominate over questions which may affect individual members and include the following:

a. Whether Defendants committed negligence; and

b. Whether Defendants were unjustly enriched;

53. <u>Adequacy of Representation</u> (Fed.R.Civ.P. 23(a)(4): Plaintiffs are adequate representatives of the Plaintiff Class because their interests do not conflict with the interest of the Plaintiff Class, which Plaintiffs seek to represent. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the Plaintiff Class and have no interests antagonistic to the Plaintiff Class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action and/or mass tort litigation.

54. <u>Superiority</u> (Fed.R.Civ.P. 23(b)(1) and 23(b)(3): A class action is superior to other available means for the fair and efficient adjudication of the claims of the Plaintiff Class. While the aggregate damages which may be and if awarded to the Plaintiff Class are likely to be in the millions of dollars, the actual damages suffered by individual members of the Plaintiff Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Plaintiff Class to individually seek redress for the wrongs done to

them. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendants and adjudications with respect to individual class members as a practical matter would be dispositive of the interests of other members not parties to the individual adjudication and would substantially impair or impede their ability to protect their interests. Individualized litigation would present the potential for varying, inconsistent or contradictory judgments and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Plaintiff Class. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

### Impact of the Scheme on Plaintiffs Proposed as Class Representatives

#### (A) Hoopers

55. During the tax years 2003, 2004, 2005, and 2006, the Hoopers had the FNS tax credit scheme directly promoted to them by Defendants Elizabeth and Louis Powell, Stewart, Kashanbo, Inc., and Virtual Professional Education, Inc. Out-of-state individuals and entities promoted the scheme to these Carthage, Texas, Defendants. As a result of these promotions, the Hoopers invested $8,295 in Gas Recovery Partners and OHT Partners for alleged partial ownership in an alleged FNS qualifying facility that was represented as a lawful method to reduce his taxes. Their initial contact with the

Defendants named in this paragraph came from a letter from Louis Powell and a promotional color brochure mailed to their home from US Energy Credits in Carthage, Texas, with the contact for a response to the brochure shown to be The Income Tax Office in Carthage. The production of the brochure was shown to be done by Virtual Professional Education, Inc. A true and correct copy of the letter from Louis Powell is attached and incorporated by reference as Exhibit A and a true and correct copy of the brochure is attached and incorporated by reference as Exhibit B. The brochure inaccurately states: "The reason you, as an individual or small company, are now able to utilize these credits is that big energy producers are sometimes unable to use the credits granted to them, and they are allowed to reassign the credits to third parties." The brochure also claims that the credits are "assignable." They are not and have never been assignable. The brochure concludes by describing all of the effort and expertise US Energy Credits has brought to the effort of bringing this tax break to individuals by its "research, credit acquisition, accounting, process management, and documentation." The representations by the Carthage Defendants in the brochures about the existence of assignable FNS tax credits were false. The Hoopers were just one of thousands of Texas families who received and responded to these untrue brochures from these Defendants. Exhibit C attached and incorporated herein by reference is a letter sent to the Hoopers which shows Defendant Stewart to be the managing partner of OHT Partners out of Carthage, Texas.

56. The representations by Defendants to the Hoopers were false and the I.R.S. eventually disallowed the sham FNS tax credits claimed on the returns based on the representations and advice of Defendants.

### (B) Cortez

57. During the tax years 2003, 2004, and 2005, Defendants National Express Tax and Sally Hand-Bostick directly promoted and sold alleged partial ownership interests in CH 4 Florida Partners and Gas Recovery Partners to Plaintiff Cortez that would allegedly generate FNS tax credits resulting in lower income taxes. Hand-Bostick also promoted the scheme to defendant preparer Elizabeth Spinelli, who sold it her clients. (For which sales Hand-Bostick was paid a commission). Defendants Elizabeth and Louis Powell, Stewart, and Virtual Professional Education, Inc., had promoted the scheme to Hand-Bostick. As a result of these promotions, Cortez invested $8,045 in Gas Recovery Partners and CH 4 Florida Partners for alleged partial ownership in alleged FNS qualifying facilities that were represented as a lawful method to reduce her taxes.

### (C) Mathis

58. In 2003, Edward W. Adams solicited the Mathis's tax preparation work by offering them tax credit purchase opportunities through the letter attached as Exhibit D. During the tax years 2003, 2004, and 2005, Defendants Edward W. Adams and Mr. Tax of America directly promoted and sold alleged partial ownership interests in Gas Recovery Partners 2 GP to Plaintiffs Mathis that would allegedly generate FNS tax credits resulting in lower income taxes. As a result the Mathis invested $2,986.00 in 2004 for 2003, $4,250 in 2005 for 2004, and $3,938 in 2006 for 2005, as shown by Exhibit E, attached and incorporated by reference.

59. The credits were taken on the 2003, 2004, and 2005 tax returns by defendant preparer Edward W. Adams, as shown on Exhibit F. These credits were all disallowed by

the I.R.S., causing the Mathis to incur additional taxes, interests, and penalties.

## E.

## Causes of Action

### (On Behalf of Plaintiffs and the Plaintiff Class)

60. Plaintiffs hereby incorporate by reference all the allegations contained in this Complaint for all causes of actions and counts subsequently pled herein.

61. Plaintiffs assert these claims on behalf of themselves and the Plaintiff Class against Defendants.

62. It is clear that the scheme originated with Calvert and Guido and their Florida business entities. They then enlisted subpromoters, the most relevant in this case being Louis and Elizabeth Powell and Carl Martin Stewart and their business entities in Carthage, Texas. The Powell group went on to become the most significant of all subpromoters, enlisting as additional major subpromoters Edward W. Adams, Timothy Adams, Sally Hand-Bostick, and Ronald Fontenot, who through their companies promoted to many tax preparers who became subpromoters in Texas.

## Count 1: Negligence

63. All previous counts and paragraphs are adopted herein by reference.

### a. Common Law and Professional Negligence

64. Plaintiffs allege that each Defendant has breached legal duties owed to Plaintiffs by failing to exercise the reasonable care that should have been exercised in the same or similar circumstances by a reasonably prudent Defendant and that such breaches of duties have been a proximate cause of Plaintiffs' injuries, for which Plaintiffs allege

claims of negligence.

65. Each individual Defendant was by training an accountant, a tax preparer, or, in the case of Stewart, a businessman with a Masters of Business Administration involved in creating, managing and marketing partnerships allegedly in the business of generating FNS tax credits. All of these Defendants knew or should have known that FNS tax credits could not be sold after they were earned (i.e., that one must own the interest when the tax credit is earned to claim it and cannot buy it after the fact), that a taxpayer had to have an ownership interest at the time the tax credit was earned, and that there were no energy converting operations going on at any of the alleged landfill sites before recommending anyone sell or purchase interests in these alleged entities. Recommending the sale by preparers or the purchase by customers of interests to allegedly earn tax credits that would lower taxes with this knowledge or without this knowledge because of failing to ascertain it prior to making a recommendation is a breach of duty to customers. These breaches by each Defendant were a proximate cause of damages to the Plaintiffs in that the Plaintiffs made purchases of ownership interests that had absolutely no value and caused Plaintiffs additional damages in the form of interest on taxes that were not timely paid because the sham FNS tax credits supposedly lowered taxes so that refunds were due. The negligence of the individual Defendants in the course and scope of their employment binds their employers through vicarious liability for their negligence.

**b.   Negligent Misrepresentation**

66. Plaintiffs also allege that the described conduct constitutes negligent misrepresentation in that each Defendant made representations directly to the Plaintiffs or

made the representations when the Defendant knew or should have known that the information contained in the representations would reach the Plaintiffs or that class of persons to whom the Plaintiffs belong (those persons who would consider purchasing interests in an entity that result in a tax credit that would reduce that tax liability) in the course of Defendants' business or in a transaction in which said Defendant or Defendants had an interest, that said Defendants furnished false information for the guidance of others, Defendants did not exercise reasonable care or competence in obtaining or communicating the information, Plaintiffs justifiably relied upon the representations, and Defendants' negligent misrepresentations proximately caused Plaintiffs' injuries. Had any Defendant in the chain failed to make or repeat the negligent misrepresentations about the FNS scheme, it would have prevented some Plaintiffs from being harmed by the sham scheme. Each individual Defendant's negligent misrepresentation binds his or her Defendant employer because the misrepresentations were made in the course and scope of employment and with the apparent authority of the employer so as to bind each employer Defendant through vicarious liability.

**Count 2: Unjust Enrichment and Other Equitable Relief**

67.     The allegations of all previous counts and paragraphs are adopted herein by reference.

68.     As an alternative cause of action if it is determined that Plaintiffs have no legal remedy against one or more Defendants, Plaintiffs plead that the conduct of Defendants have resulted in Defendants being unjustly enriched to the detriment or impoverishment of Plaintiffs, without justification and that if Plaintiffs are without a legal

remedy against such Defendants, Plaintiffs should be entitled to full restitution of all money paid to all Defendants as an equitable remedy for such unjust enrichment. Most Defendants were paid commissions on the sales of the worthless sham interests, while others reaped pure profits from the sales since none of the money was being invested in any ongoing operations or infrastructure beyond the generation of marketing materials and fraudulent documentation of mythical operations. It is imperative that at the very least all of such unjust enrichment be disgorged from each Defendant.

### F.

### Damages

69. Each Plaintiff and each member of the Plaintiff Class have been damaged in the sum of their original purchase price of their valueless sham ownership interests in the alleged FNS operation and any interest and penalties assessed by the I.R.S. for their delinquent taxes because of the claimed FNS tax credit and Defendants are jointly and severally liable for these damages and exemplary damages.

### G.

### Attorney's Fees and Non-Taxable Costs

70. Plaintiffs seek reasonable attorney's fees and reimbursement of taxable and nontaxable costs.

### H.

### Prayer for Relief

71. WHEREFORE, Plaintiffs pray for:

a. An order certifying the Plaintiff Class and appointing Plaintiffs as the

representatives of the Plaintiff Class, and appointing the law firms representing Plaintiffs as counsel for the Plaintiff Class;

b. An award to Plaintiff and the Plaintiff Class of actual and exemplary damages;

c. Payment of costs incurred;

d. Payment of reasonable attorney's fees;

e. Joint and several liability of all Defendants for all damages, costs and attorney's fees; and

f. Such other and further relief as the Court may deem proper.

Respectfully submitted,

BUSH LEWIS, PLLC
San Jacinto Building
595 Orleans Street, Suite 500
Beaumont, TX 77701
409/835-3521
409/835-4194 (Fax)

By: _____
Kenneth W. Lewis
Ken.L@bushlewis.com
Texas Bar #12295300

Mitchell A. Toups
Texas Bar #20151600
Weller, Green, Toups & Terrell, L.L.P.
P.O. Box 350
Beaumont, TX 77704
409/838-0101
409/832-8577 (Fax)
Matoups@wgttlaw.com

Thomas A. Peterson
Texas Bar #15842900
PETERSON, PETIT & PETERSON
595 Orleans, Ste. 511
Beaumont, Texas 77701
409/838-6144
409/838-4421 (Fax)
tap@mtelaw.com

ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I certify that on September 28, 2010, a copy of this Plaintiffs' Fifth Amended Class Action Complaint was served electronically on all counsel of record and by U.S. Mail and electronically on the following Pro Se defendant:

Vinson Stanphill
3330 N. Galloway, Suite 314
Mesquite, Texas 75150

_____
Kenneth W. Lewis